**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

|  |  |  |
|---|---|---|
| COSMETIC WARRIORS LIMITED, | ) | Civil Action No. 21cv01291 |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | JURY TRIAL DEMANDED |
|  | ) |  |
| LUS BRANDS INC., | ) |  |
|  | ) |  |
| Defendant. | ) |  |

## COMPLAINT

This trademark case is about hair care and related products marketed and sold throughout the United States and elsewhere primarily under the marks **LUSH** and **LUS**. Plaintiff Cosmetic Warriors Limited ("Plaintiff" or "Cosmetic Warriors") owns the former and Defendant LUS Brands Inc. ("Defendant" or "LBI") uses the latter. For its complaint, Plaintiff alleges as follows:

## THE PARTIES

1.      Cosmetics Warriors is a company organized and existing under the laws of the United Kingdom, with its principal place of business at 29 High Street, Poole, Dorset BH15 1AB in the United Kingdom.

2.      Defendant is a Canadian corporation with a place of business at 2 Bloor Street East, Suite 3500, Toronto, Ontario, Canada M4W1A8.

## NATURE OF ACTION AND JURISDICTION

3.      This is an action for trademark infringement and unfair competition brought pursuant to Sections 32(1) and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114(1) and 1125(a), the Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43 *et seq*., and

1

Minnesota common law, and for an order refusing registration of trademark applications under Section 37 of the Lanham Act, 15 U.S.C. § 1119.

4.      This Court has jurisdiction over this action under Section 39 of the Lanham Act, 15 U.S.C. § 1121, and Title 28 of the United States Code, §§ 1331 and 1338, and supplemental jurisdiction over Cosmetic Warriors' claims under state law under 28 U.S.C. § 1367(a).  This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the matter in controversy in this action exceeds the sum or value of $75,000, exclusive of interest and costs, and is between a citizen of the United Kingdom and citizens of Canada.

5.      This court has personal jurisdiction over Defendant because Defendant has sufficient minimum contacts with Minnesota such that Defendant has purposefully availed itself to the laws of the State of Minnesota by, among other things, deliberately advertising, offering to sell, selling, and shipping hair care and related products under the trademarks at issue in this action to consumers in the District of Minnesota. Exercising such jurisdiction over Defendant is consistent with the United States Constitution and laws.

6.      In the alternative, this court has personal jurisdiction over Defendant under Rule 4(k)(2) of the Federal Rules of Civil Procedure because this cause of action arises under federal law, and Defendant is a foreign organization who upon information and belief, is not subject to jurisdiction in any state's courts of general jurisdiction. Further, exercising jurisdiction over Defendant is consistent with the United States Constitution and laws based on Defendant's contacts with the United States, including but not limited to: (1) the filing of a trademark application with the U.S. Patent and Trademark Office ("USPTO") for a mark at issue in this action; (2) communicating with Cosmetic Warriors' counsel and the USPTO's interlocutory attorney during the opposition proceeding related to the mark at issue in this suit; (3) advertising,

offering to sell, selling, and shipping hair care and related products under the trademarks at issue throughout the United States; (4) soliciting and partnering with third party retail salons in the United States to sell its products under the marks at issue; (5) engaging influencers on social media who, on information and belief, reside in the United States to advertise and promote its products under the marks at issue; and (6) contracting with third party service providers in the United States, including Defendant's "payment processing partners" with whom it shares user data, such as Shopify, Inc., Stripe, Inc., PayPal, Inc. and Apple Pay, as well as Defendant's advertising partners, such as Google, Inc., Facebook, Inc., Pinterest, Inc., and TikTok, Inc., in connection with its e-commerce websites featuring the marks at issue in this lawsuit.

7.      Venue is proper in this district under 28 U.S.C. § 1391.

## FACTS

**A.      Cosmetic Warriors and Its LUSH Marks**

8.      Cosmetic Warriors and its licensees, together, are one of the world's premier suppliers of bath, hair care, and beauty products made from natural, wholesome ingredients. It owns the renowned LUSH brand and its products and services are sold from approximately 200 LUSH-branded retail stores operating in the United States, with 4 shops in Minnesota, including shops in Edina, Roseville, Bloomington, and Minnetonka.  LUSH branded products and services are also sold via the brand's catalogs and Internet web sites, including those located at www.lush.com and www.lushusa.com. The LUSH brand is extremely well known, both internationally and in the United States, and has long had a reputation of a lifestyle brand, providing high-quality bath, hair care, beauty products, gifts, spa services, bags and clothing items, accessories, personal care consulting, educational and charitable services, entertainment services and a wide variety of other related goods and services. Over the last several years, the

3

LUSH brand's business in the United States has grown substantially and it has become one of the nation's best known retailers of bath, hair care, and beauty products and services.

9.      Cosmetic Warriors and its licensees have been commercially using the LUSH and LUSH FRESH HANDMADE COSMETICS marks, similar variants, and associated logos (the "LUSH Marks") in the United States since at least as early as 1995 through mail order, telephone, Internet, and catalog sales throughout the United States. The LUSH Marks have been and continue to be used on and in connection with cosmetics, bath and beauty preparations in the nature of skin creams and moisturizers, perfumes, bath goods, skincare products such as creams and moisturizers, and hair care products such as shampoos, conditioners, hair treatments, hair dyes, and styling gels, as well as retail store and beauty consultation services directed to the same.

10.     The LUSH brand markets and sells its products and services to men and women of all ages. Younger and middle-aged women in particular comprise a significant segment of the brand's existing customer base.

11.     The LUSH Marks have been used to identify retail locations in the United States since at least 2003, with the opening of the first LUSH branded retail shop in San Francisco, California. LUSH branded retail stores now operate within many major malls and shopping districts, such as the Fashion Square Mall in Scottsdale, Arizona, the Mall of America in Bloomington, Minnesota, and Union Square in San Francisco, California, to name just a few examples.

12.     Cosmetic Warriors owns, among others, the following United States Trademark Registrations and Application related to its LUSH Marks:

4

| MARK | INT'L CLASS(ES) | REG / APP NO. | REG DATE |
|---|---|---|---|
| LUSH | IC 003 | 2,282,428 | October 5, 1999 |
| LUSH | IC 035 | 2,853,483 | June 15, 2004 |
| LUSH | IC 016 | 3,001,303 | September 27, 2005 |
| LUSH | IC 003 | 3,008,685 | October 25, 2005 |
|  | IC 003 | 3,102,767 | June 13, 2006 |
| LUSH | IC 044 | 3,987,808 | July 5, 2011 |
| LUSH | IC 003 | 4,118,438 | March 27, 2012 |
| LUSH TIMES | IC 016 | 4,532,289 | May 20, 2014 |
| LUSH | IC 003; IC 004; IC 009; IC 016; IC 018; IC 025; IC 026; IC 035; IC 038; IC 041; IC 042; IC 044; IC 045 | 79/281,982 | N/A |

A copy of each of these registrations and application is attached as **EXHIBITS A – I**. Each of the registrations shown in Exhibits A – H are valid and subsisting, and are *prima facie* or conclusive evidence of Cosmetic Warriors' exclusive right to use said marks in commerce on the goods and services specified in each registration. Further, each of the registrations shown in Exhibits A – G are incontestable.

13.     Cosmetic Warriors has given notice of its registered rights in the LUSH Marks by using the ® symbol in connection with its registered trademarks.

14.     The LUSH brand is considered to be among the most innovative and creative brands of cosmetics, soaps, hair products, bath products, perfumes, and related goods and services in the world today. Its products are frequently imitated. For example, as part of the LUSH brand's decades-long commitment to support the environment through reducing its use of packaging materials, it has invented and formulated several "Naked" products, such as its dry shampoo bars.

15.    Cosmetic Warriors has naturally and systematically expanded its product line since 1995, including beyond cosmetics and bath products. Cosmetic Warriors has used its LUSH Marks on and in connection with candles, clothing, magazines, tote bags, and other goods. For instance, the LUSH brand introduced its "Knot-Wraps" in the U.K. 2009, which are patterned textile squares used in giftwrapping and based on the Japanese tradition of Furoshiki. Since 2010, LUSH branded Knot-Wraps have been promoted and sold in the U.S in a wide range of colors, patterns, and sizes for use as scarves, hair accessories, and totes. *See* https://www.lushusa.com/extras/knot-wraps/?cgid=knot-wraps&start=0&sz=28.

16.    Over the years, the LUSH brand has deliberately increased its commitment to creating products designed for naturally curly, coily, and textured hair. In 2018 it engaged Sarah Sango, a renowned hairdresser in the United Kingdom and a perennial regular at London's Fashion Weeks, whose decades of experience in styling natural hair enabled her to accumulate a loyal client base and grow her own brand. She works at the LUSH Hair Lab, the brand's testing ground for new haircare innovations, and collaborates with the LUSH brand's scientists and product inventors to reformulate and create new products specifically for naturally curly, coily, and textured hair. The LUSH brand currently offers and sells six products formulated in collaboration with Ms. Sango, including conditioners, a co-wash bar, a hair cream, conditioning primer, and hair and scalp oil. *See* https://www.lushusa.com/curly-coily-textured.html. These products are advertised, promoted, and offered for sale on the LUSH brand's website under a haircare sub-category labeled "Curls, Coils, and Texture," and dubbed the "Twist and Twirl" product line. These same products are also presented on a separate webpage under the designation "Black Haircare," where Ms. Sango's story and methods are further explained. The

screenshots collectively attached as **EXHIBIT J** are from the LUSH brand's U.S. website and show the aforementioned webpages with these products.

17.     Cosmetic Warriors and its licensees have expended a substantial amount of money and effort in advertising and promoting the LUSH Marks and associated products and services. The LUSH Marks are well known and consumers have come to know, rely upon, and recognize "LUSH" as identifying Cosmetic Warriors' products and services.  Indeed, "LUSH" is the corporate persona and identity of Cosmetic Warriors in the minds of consumers. As a result of Cosmetic Warriors' substantial promotional, advertising, publicity, and public relations activities, the LUSH Marks have acquired substantial goodwill and are extremely valuable commercial assets.

18.     The LUSH Marks are inherently distinctive, serving to identify and indicate the source of Cosmetic Warriors' products and services to the consuming public and to distinguish them from those of others.

19.     Cosmetic Warriors also has common-law rights in the LUSH Marks throughout the United States covering the wide array of cosmetics, apparel, accessories, and related goods and services on which the Marks have been continuously used.

**B.     Defendant's Infringing and Unfair Conduct**

20.     Defendant, with constructive and, upon information and belief, actual knowledge of Cosmetic Warriors' LUSH Marks began making, offering for sale, selling, promoting, and/or advertising haircare products under the marks LUS and LUS BRANDS, as well as related variants, (the "LUS Marks") in or around 2016-17.

21.     Defendant now uses the LUS Marks in at least the following ways:  as part of its registered domain name, www.lusbrands.com, on its website and social media accounts (*e.g.*, Facebook, Twitter and Instagram), in online advertisements, and on product labels.

22.     Defendant manufactures and sells haircare products and related accessories under the LUS Marks.  Its "LUS Signature" line of products consists of shampoos, conditioners, and styling sprays separately grouped for wavy, curly, and kinky-coily hair types. Defendant recently coined its "Black Label Line" to encompass a deep conditioning and repair serum, an elixir oil, and a hair perfume. Finally, its "Accessories" line includes a hair brush, t-shirt towel, fashion scarf, spray bottle, and clutch.

23.     Upon information and belief, Defendant promotes, offers for sale, and sells under the LUS Marks its hair care products and accessories in interstate commerce across the United States, including in Minnesota. For instance, Defendant's ecommerce website advertises the products using U.S. Dollars, and consumers in Minnesota (and elsewhere) are able to purchase products via online ordering functionality. Defendant's website further touts that its brand and products have been featured in widely circulated third party publications, such as Cosmopolitan, PopSugar, and BuzzFeed, evidencing an intent to promote its brand and products to consumers throughout the United States, including in Minnesota.

24.     Defendant's products are also sold at retail in certain hair salons. Retailers can apply "to be considered as an Authorized LUS Retailer" via Defendant's website, https://lusbrands-wholesale.com/pages/wholesale-register, which currently states that Defendant has "a few select salon partners," https://lusbrands.com/pages/help-center#!can-i-buy-your-products-in-stores. On information and belief, Defendant has salon partners in the United States.

25.     Cosmetic Warriors first became aware of Defendant's use of the LUS Marks upon the publication of the latter's U.S. Trademark Application Serial No. 87/778,204 for the word mark "LUS" covering a wide array of cosmetics, skincare, and hair care products (the "LUS Application"). The LUS Application was filed by Defendant on January 31, 2018, claiming a first use date of November 24, 2016, and it published for opposition on January 8, 2019. A copy of the application status downloaded from the Trademark Status and Document Retrieval ("TSDR") portal on the USPTO's website is attached as **EXHIBIT K**.

26.     Virtually no examination of Defendant's LUS Application occurred at the USPTO prior to its publication. According to the search summary (shown below) in the prosecution history, accessible in the TDSR portal, the attorney assigned to examine the application performed three linguistic searches and viewed 35 resulting documents over the course of just 6 minutes:



None of the attorney's searches captured Cosmetic Warriors' previously registered LUSH Marks. Defendant's LUS Application was therefore not examined in view of Cosmetic Warriors' trademarks. On information and belief, had the examining attorney considered the LUSH Marks, the LUS Application would have been refused.

27.     Under 15 U.S.C. § 1052(d), a trademark must be refused registration if it "[c]onsists of or comprises a mark which so resembles a mark registered in the Patent and Trademark Office, or a mark or trade name previously used in the United States by another and not abandoned, as to be likely, when used on or in connection with the goods of the applicant, to cause confusion, or to cause mistake, or to deceive."

28.     "LUSH" and "LUS" are confusingly similar in sight, sound, and commercial impression. The marks differ by only one letter. Both begin with the sequence "L-U-S." Both marks are pronounced how they are spelled, with the only difference being the words' final sounds – "sh" on the one hand, and "ss" on the other. *Compare, e.g.,* https://youtu.be/EmJUVHNE2OE *with* https://www.youtube.com/watch?v=xRBsiDAMFj4.

29.     Like many of the registered LUSH Marks, Defendant's LUS Application lists cosmetics, skincare, and hair care goods in International Class 3 and retail store services featuring those products in International Class 35.

30.     Because the marks are confusingly similar and the involved goods are overlapping and closely related, if not legally identical, a reasonable trademark attorney examining the LUS Application against the registered LUSH Marks would have concluded that a likelihood of confusion existed and refused to register the LUS trademark.

31.     When the LUS Application published in January 2019, Cosmetic Warriors filed a notice of opposition within the 30-day window and simultaneously wrote to Defendant's counsel seeking to explore a resolution. Cosmetic Warriors wanted to resolve the matter without resorting to a federal lawsuit.

32.     As a result of the Opposition and the parties' associated correspondence, Defendant has had actual notice of Cosmetic Warriors' superior rights in the LUSH Mark and its

objection to Defendant's use of the LUS Marks for more than two years. Defendant is aware of the vast and valuable goodwill and reputation represented and symbolized by Cosmetic Warriors' LUSH Marks. Defendant is also aware that the LUSH Brand's consumers and potential consumers rely on Cosmetic Warriors' LUSH Marks as distinguishing its products and services from those of others. Since receiving actual notice from Cosmetic Warriors, Defendant has taken no steps to cease its infringing conduct.

33.     Opposition Proceeding No. 91246236 has been pending since January 31, 2019 (the "Opposition"), but the parties are no closer to achieving a resolution. Cosmetic Warriors fears that a decision in the Opposition is still several years away. Moreover, Defendants' infringing use and global expansion under the LUS Marks have continued undeterred throughout the Opposition, which suggests that even a decision from the Trademark Trial and Appeal Board ("TTAB") in Cosmetic Warriors' favor would not cause Defendant to cease its use of the confusingly similar LUS Marks.

34.     Beginning in or about 2020, Defendant began to expand its brand globally beyond North America. On or about November 5, 2020, Defendant registered the domain http://lusbrands.global, and has since started to operate an e-commerce website located there for the purpose of selling its products in Australia, Europe, and, most recently, the United Kingdom.

35.     On November 13, 2020, Defendant filed Canadian trademark applications for the related mark L·U·S BRANDS LOVE UR SELF in both word and design formats. Defendant then filed International Registrations based on those Canadian applications, designating Australia, the European Union, U.K., and the U.S.

36.     Upon learning of Defendant's use of the LUS Marks in Europe, Cosmetic Warriors' European counsel petitioned for and received a preliminary injunction on March 11,

2021, by which the Court of Dusseldorf found a likelihood of confusion between Defendant's use of the LUS Marks and Cosmetic Warriors' LUSH Marks, and prohibited Defendant from offering, distributing, advertising and marketing hair care products under the LUS Marks in Europe. Defendant has resisted service of that German order by appointing German counsel only for negotiations and not yet for the court proceedings in what is believed to be a calculated effort to evade the consequences of its infringing conduct. Therefore, Cosmetic Warriors has been forced to initiate foreign service of the preliminary injunction court order upon Defendant in Canada.

37.    Upon information and belief, Defendant continues to offer and sell its products throughout Europe, the U.K., and Australia (in addition to the U.S. and Canada). Upon further information and belief, Defendant recently switched from selling its products in the U.K. through a third-party distributor to direct sales to U.K. consumers through its new global e-commerce website.  Upon information and belief, Defendant imports into the United Kingdom through the Netherlands and, despite the pan-EU preliminary injunction granted in Germany, has continued to do so pending service of that injunction.  Defendant has refused to cease use of the LUS brand globally despite Cosmetic Warriors' cease and desist letters sent from Australia, Canada, the U.K. and Europe.

38.    Based on discussions between the parties' counsel in the European proceedings, Cosmetic Warriors understands that Defendant's branding executions and materials used abroad flow out of those employed in the U.S. market. In other words, Defendant's U.S. business and branding strategies shape and drive its business globally.

39.     Cosmetic Warriors has also observed in recent months that Defendant's online advertising under the LUS Marks has dramatically increased. Defendant's online advertisements are typically in the form of short videos showing women using its products.

40.     Defendant's use of the LUS Marks has always been and continues to be without the permission, consent, or authority of Cosmetic Warriors.

**C.     Effect of Defendant's Conduct on Cosmetic Warriors and the Consuming Public**

41.     Defendant's LUS mark is confusingly similar to Cosmetic Warriors' LUSH mark. Both parties also present their respective marks most frequently using white text against a black backdrop, as shown below.

 

 

42.     Defendant uses an italicized type font to evoke a handwritten chalk style when displaying its LUS Marks, which is substantially the same way in which Cosmetic Warriors identifies its product names under the LUSH brand and communicates its brand messaging, as shown below. Upon information and belief, consumers recognize Cosmetic Warriors' handwritten chalk style typeface as a distinctive component of the LUSH branding and trade dress. Upon further information and belief, Defendant's use of substantially the same typeface is designed to emulate the LUSH brand and capitalize on its associated goodwill.



43.     The products sold by Defendant under the LUS Marks are competitive to and overlapping with the products sold by Cosmetics Warriors under its LUSH Marks. For example, both parties sell hair care products specifically for curly, coily, and textured hair. The product lines of both parties contain shampoos, conditioners, moisturizers, and styling preparations.

44.     Defendant has also recently released a "Love Ur Curls Scarf," which appears to be a calculated attempt to imitate the LUSH brand's Knot-Wraps. Like the Knot-Wraps, Defendant's scarf is a textile square featuring bright colors, as shown below.

**LUSH-branded Knot-Wraps**                                        **Defendant's Scarves**



45.     Both parties promote and/or sells their respective products over the Internet and through social media, such as Facebook, Twitter, YouTube, and Instagram, using similar URLs

14

and account names. The parties' websites and social media pages all prominently display and feature their respective LUSH and LUS Marks.

46.     Both parties target the same types of consumers under their respective marks.

47.     Both parties employ similar messaging to appeal to consumers by touting many of the same ethical standards and values, as shown below.

| Cosmetic Warriors |  | | | | | |
|---|---|---|---|---|---|---|
| Defendant |  | | | | | |

48.     The continued use by Defendant of the LUS mark on its websites, in its advertising and promotional materials, and on its products is likely to diminish the goodwill associated with Cosmetic Warriors' LUSH trademark.

49.     Defendant's videos used in its online advertising typically show women using Defendant's products while featuring the LUS Marks and associated branding, which is similar in format to many of the LUSH brand's video content it has regularly produced for years starting before Defendant's adoption and use of the LUS Marks. For instance, the LUSH brand produces a video series called "How to Use" that depict consumers using the brand's products, and a series called "How It's Made" featuring its product formulation specialists and manufacturing demonstrations. On information and belief, the LUSH brand's customers frequently associate Defendant's online videos with the brand.

50.     Defendant's products sold under the LUS Marks are being provided and promoted throughout the same geographic markets as Cosmetic Warriors' products and services – namely, throughout the United States. Upon information and belief, Defendant is deriving and will

continue to derive substantial revenue from its products and services provided under the LUS Marks.

51.     Defendant's unauthorized use of the LUS Marks is likely to cause confusion or mistake or to deceive consumers into believing that Defendant's products and services are sponsored, licensed or authorized by, or are affiliated, connected, or otherwise associated with Cosmetic Warriors and its renowned LUSH brand when the same is not true.

52.     Defendant's continued use of the LUS Marks is with full knowledge of the prior ownership and use by Cosmetic Warriors of its LUSH Marks.

53.     As a result of Defendant's unauthorized use of the LUS Marks, Defendant has been and continues to be unjustly enriched, to the detriment of Cosmetic Warriors.

54.     Defendant has acted and continue to act without regard to Cosmetic Warriors' intellectual property rights, brand reputation, and goodwill.

55.     On information and belief, Cosmetic Warriors' brand reputation and goodwill has been tarnished and damaged as a result of Defendant's unauthorized use of the LUS Marks on a hair dryer product – the "LUS Dryer & Diffuser" – sold through Defendant's website between November 2019 and February 2020. Defendant, in cooperation with the U.S. Consumer Product Safety Commission and Health Canada, has recalled the dryers due to an unreasonable risk of shock or electrocution.

56.     Defendant's unauthorized use of the LUS Marks on and in connection with its products and services has significantly injured Cosmetic Warriors. Specifically, Defendant (a) has traded upon and threatens to further trade upon the significant and valuable goodwill in Cosmetic Warriors' LUSH Marks; (b) is likely to cause public confusion as to the source, sponsorship, or affiliation of Defendant's products or services; (c) has damaged and threaten to

further damage Cosmetic Warriors significant and valuable goodwill in Cosmetic Warriors' LUSH Marks; (d) has injured and threatens to further injure Cosmetic Warriors' right to use Cosmetic Warriors' LUSH Marks as the exclusive indicia of origin of Cosmetic Warriors' bath, hair, and beauty products and services in Minnesota and throughout the United States; (e) has lessened the capacity of Cosmetic Warriors' LUSH Marks to uniquely indicate the source of its products and services; and (f) has engaged in unlawful and unfair business practices from which members of the public are likely to be deceived as to the source, sponsorship, or endorsement of Defendant's goods.

57.    Unless these infringing acts by Defendant are restrained by this Court, they will cause irreparable injury to Cosmetic Warriors and to the public, for which there is no adequate remedy at law.

58.    Defendant's acts of infringement and unfair competition complained of herein have been deliberate, willful, intentional, and in bad faith. Since at least January 31, 2019, Defendant's unlawful conduct has been with full knowledge and in conscious disregard of Cosmetic Warriors' trademark rights. Defendant's alleged excuses, justifications, and other attempts to distort and obfuscate the facts of this matter undertaken by Defendant have been dilatory, disingenuous, and without a sound basis in fact or applicable law. In view of the egregious nature of Defendant's actions, this is an exceptional case as described in Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a).

### FIRST CLAIM FOR RELIEF
### Federal Trademark Infringement

59.    Cosmetic Warriors repeats and re-alleges by reference the allegations in the preceding paragraphs, as if fully set forth herein.

60.     Defendant's unauthorized use of the LUS Marks on and in connection with hair care products and related accessories is likely to cause confusion, mistake, or deception as to the origin, sponsorship, or approval vis-à-vis Cosmetic Warriors' LUSH brand.

61.     The acts of Defendant complained of herein constitute federal trademark infringement of Cosmetic Warriors' LUSH Marks, in violation of 15 U.S.C. § 1114(1).

62.     By reason of Defendant's bad faith and willful infringement, Cosmetic Warriors is entitled to recover actual damages, treble damages, an accounting for Defendant's profits, attorney fees, and the costs of this litigation pursuant to 15 U.S.C. § 1117 and injunctive relief pursuant to 15 U.S.C. § 1116.

## SECOND CLAIM FOR RELIEF
### Federal Unfair Competition

63.     Cosmetic Warriors repeats and re-alleges by reference the allegations in the preceding paragraphs, as if fully set forth herein.

64.     Defendant's unauthorized use of the LUS Marks on and in connection with hair care products and related accessories is likely to cause confusion, mistake, or deception as to the origin, sponsorship, or approval vis-à-vis Cosmetic Warriors' LUSH brand.

65.     The acts of Defendant complained of herein constitute unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).  Cosmetic Warriors is entitled to recover actual and treble damages, attorney fees, and the costs of this litigation pursuant to 15 U.S.C. § 1117 and injunctive relief pursuant to 15 U.S.C. § 1116.

## THIRD CLAIM FOR RELIEF
### Violation of Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43 *et seq*.

66.     Cosmetic Warriors repeats and re-alleges by reference the allegations in the preceding paragraphs, as if fully set forth herein.

18

67.     In addition to the injuries alleged in these counterclaims, and on information and belief, Defendant's conduct has resulted in Cosmetic Warriors' further loss of money or property, such as, for example, diminished goodwill in its LUSH Marks in Minnesota and lost sales due to the same to residents of Minnesota.

68.     The acts of Defendant complained of herein constitute violate the Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43 *et seq.* Cosmetic Warriors is entitled to an injunction.

## PRAYER FOR RELIEF

WHEREFORE, Cosmetic Warriors prays that:

A.     Defendant, its officers, agents, servants, employees, attorneys, and all those persons in active concert or participation with any of them, be permanently enjoined from using the LUS Marks, and any other mark that is confusingly similar to the LUSH mark;

B.     Defendant, its officers, agents, servants, employees, attorneys, and all those persons in active concert or participation with any of them, be required to modify all packaging and promotional materials to eliminate the LUS Marks, and any other mark that is confusingly similar to the LUSH Marks;

C.     Defendant, its officers, agents, servants, employees, attorneys, and all those persons in active concert or participation with any of them, be required to deliver to the Court for destruction, or show proof of destruction of, any and all labels, signs, prints, packages, wrappers, receptacles, and advertisements, and any other materials in their possession or control that use the LUS Marks, and any other mark that is confusingly similar to the LUSH Marks;

D.     Defendant, its officers, agents, servants, employees, attorneys, and all those persons in active concert or participation with any of them, be required to take all reasonably

19

available steps to remove the LUS Marks, and any other mark that is confusingly similar to the LUSH Marks, as a designator of Defendant's products from any listing in any business directory, yellow pages, internet directory, and any other listing service;

E.      Defendant be ordered to file with this Court and to serve upon Cosmetic Warriors within 30 days after the entry and service on Defendant of an injunction, a report in writing and under oath setting forth in detail the manner and form in which Defendant has complied with the injunction;

F.      Cosmetic Warriors recover all damages it sustains as a result of Defendant's infringement and unfair competition, and that said damages be trebled;

G.      Defendant be ordered to disgorge its profits resulting from the infringing activities complained of herein, and that such profits be paid over to Cosmetic Warriors, increased as the Court finds to be just under the circumstances of this case;

H.      Cosmetic Warriors recover statutory damages as provided for in 15 U.S.C. § 1117(d);

I.      Defendant and all others acting in concert with it be directed to pay enhanced damages;

J.      Cosmetic Warriors recover its reasonable attorney fees;

K.      Cosmetic Warriors recover its costs of this action, together with prejudgment and post judgment interest;

L.      An Order be issued directing the Commissioner of the United States Patent and Trademark Office forbidding registration of LUS Brands pending Application Serial No. 87/778,204; and

M.      Cosmetic Warriors recover such other and further relief as the Court may deem just and appropriate.

## JURY DEMAND

Under Fed. R. Civ. P. 38(b), Cosmetic Warriors hereby demands a trial by jury on all issues triable as of right by a jury.

Date: May 27, 2021                    s/*Heather Kliebenstein*
                                      Heather Kliebenstein
                                      Bar ID #0337419
                                      MERCHANT & GOULD P.C.
                                      Suite 2200
                                      150 South Fifth Street
                                      Minneapolis, MN 55402
                                      Phone: 612-332-5300
                                      Email: hkliebenstein@merchantgould.com


                                      *Attorney for Plaintiff Cosmetic Warriors Limited*